AHART *v.* STATE.

4176 143 S. W. 2d 23

Opinion delivered June 24, 1940.

■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■

■■■ ■ ■■■■■■

*John S. Combs,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey;* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Clay Ahart, and Lewis Dunkle were charged in an information with the crime of grand larceny alleged to have been committed in Madison county, Arkansas, by stealing two cows belonging to Roy Ogden.

A severance was requested and appellant was placed on trial, convicted, and sentenced to serve one year in the state penitentiary. Lewis Dunkle, who was an accomplice in the stealing of the cattle, testified on behalf of the state.

Two errors are assigned here for review. It is first contended that the testimony of the accomplice Dunkle is not sufficiently corroborated by other evidence on the part of the state to support the conviction; and, second, "that there is no corroboration of the accomplice, Dunkle, as to the venue of the crime in this case."

On the first assignment, under our decisions, it is not necessary that the evidence, which is alleged to corroborate the testimony of the accomplice, and which tends to connect appellant, Ahart, with the commission of the crime, be sufficient alone to convict. The sufficiency of this corroborative evidence is always a question for the jury.

As was said by this court in *Pickens v. State,* 198 Ark. 916, 132 S. W. 2d 10: ". . . The sufficiency of the corroborating evidence was a question for the jury and that, together with the testimony of the accomplices, is clearly sufficient to support the verdict and judgment.

*Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Mullen* v. *State,* 193 Ark. 648, 102 S. W. 82; *Shaw* v. *State,* 194 Ark. 272, 108 S. W. 2d 497."

And in the recent case of *Breed* v. *State,* 198 Ark. 1004, 132 S. W. 2d 386, this court held that the evidence used to corroborate an accomplice is sufficient if it tends to connect the defendant with the commission of the crime and it is not required to be sufficient, alone, to convict. It was there said:

". . . The rule is that the evidence independent of that of the accomplice, must tend to connect the defendant with the commission of the crime.

"It need not be such as, considered wholly apart from the testimony of the accomplice, to warrant a conviction. The rule in this regard was rather clearly announced in a somewhat recent case, *Shaw* v. *State,* 194 Ark. 272, 108 S. W. 2d 497. It was there announced: 'It is sufficient to say that this was purely a question for the jury. They believed the testimony of Scott, and there is nothing in the evidence to show that it was physically impossible for the witness to have recognized the appellants as he said he did. The testimony of Scott, independent of that of the accomplices, tended to connect the appellants with the commission of the crime, although it might not have been sufficient of itself to convict them. This satisfied the rule. The sufficiency of the corroborating evidence was a question for the jury and, together with the testimony of the accomplice, it is clearly sufficient to support the verdict.' "

An examination of the record discloses testimony to the following effect: Roy Ogden testified that he lives near Pettigrew in Madison county, Arkansas. About October 15, 1939, he lost two white-faced red cattle, one weighing approximately 800 pounds and the other 900 pounds; both were fat and ready for beef. He was informed that these cattle had been found down by Mr. Thacker's place with ropes on them. He went down and identified the cattle as his own.

Mrs. Myrtle Thacker, mother of Lewis Dunkle (the accomplice), testified that appellant, whom she had known about six years, spent the night before the cattle were found at her house, with her son, and that they came in between eleven and twelve o'clock.

Lewis Dunkle's testimony was to the effect that he and appellant roped the cattle belonging to Mr. Ogden during the month of October, 1939. They first stole a forty-foot rope and then went out to look for cattle that they could steal that night. They beat the rope in two with a rock and got the two cattle in question they are charged with stealing. They tied up the cattle with the ropes around 3:30 or 4 o'clock in the afternoon and then went to St. Paul to see Sam Ritchie. They also saw Connie Calloway on the trip and tried to get him to haul the cattle. Calloway told him he was afraid to haul them because it was misting and they might leave tracks; that Calloway suggested they get Sam Ritchie to haul them and to put them in Sam Ritchie's pasture and he would haul them when they got a big load.

He further testified that Sam Ritchie took both of them home in his truck and they spent the night at his mother's (Mrs. Myrtle Thacker's) home. They reached there around midnight and left the next morning about 8 o'clock, and went where the cattle were tied, untied them and drove them to water, and that somebody came along and they ran, leaving the ropes on the cattle. He identified the rope that was exhibited to him at the trial as one of the ropes that they used with which to tie the cattle, saying, ''Well, I can tell by the way it is cut, by the length of it and what size rope it is.'' He described the cattle as white-faced and red, one would weigh around 900 and the other 800 pounds, and were fat.

Chester Thacker testified that he has lived in Madison county all his life and is acquainted with Roy Ogden. He recalls the occasion when Ogden's two cattle were stolen and saw these cattle in his barn. He gives the same description of the cattle as the other witness, and

took a rope off of one of the cows and has had it in his possession since.

In the testimony of Sam Ritchie appears a statement which he admitted making and signing before the sheriff and deputy prosecuting attorney in which he states that he was approached by Clay Ahart and Lewis Dunkle to get him to haul cattle for them, but that he refused. On direct examination he denied that he hauled these two boys to Mrs. Thacker's on the night following the stealing of the cattle.

Another witness, Ernest Thacker, gave testimony to the following effect: He lives on the farm with his brother and he found some red cattle with white faces with ropes on them, about ten o'clock in the morning, which they put in his brother's barn. He did not take the ropes off the cattle. One of the cows weighed around 800 and the other 900 pounds. His father notified Ogden about the cows.

When we give to the above testimony its strongest probative force in favor of the state, as we must do, we think it sufficient to take the case to the jury. We cannot say, as a matter of law, that there was not sufficient evidence, independent of that of the accomplice Dunkle, which tended to connect appellant with the commission of the crime, although such evidence might not have been sufficient alone to convict him. We think the evidence was sufficient to satisfy the rule.

The second assignment, which relates to the venue of the action, we think is without merit. Under the present law (§ 26 of Initiated Act No. 3 of 1936, Acts of 1937, p. 1384) there is a presumption that the offense charged in an indictment was committed within the jurisdiction of the court, unless there be affirmative evidence to the contrary.

In the recent case of *Brockelhurst* v. *State*, 195 Ark. 67, 111 S. W. 2d 527, this court said: ''Section 26 of said initiated act No. 3 provides: 'It shall be presumed upon trial that the offense charged in the indictment was committed within the jurisdiction of the court, and the court

may pronounce the proper judgment accordingly, unless the evidence affirmatively shows otherwise.' It is said this provision shifts the burden to defendant to prove jurisdiction or the lack of it, and that he was unable to do so because of lack of time allowed to prepare for trial. Whether this act places the burden on defendant to show lack of jurisdiction, we do not now decide. The proof in this record is abundant, if not beyond a reasonable doubt, that the crime was committed in Lonoke county, and venue may be shown by a mere preponderance of the evidence. Such was the law prior to said act 3.''

We think the venue was established in the instant case in Madison county by a preponderance of the evidence. We find no evidence in the record to the contrary.

Finding no error, the judgment is affirmed.