McGHEE *v.* STATE.

4524                                        215 S. W. 2d 135

Opinion delivered November 29, 1948.

222

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J. December 18, 1947, appellant was, by information, charged with the two offenses of forgery and uttering. A jury convicted him on both charges and assessed his punishment at two years in the State Penitentiary on each. From the judgment, in which the court directed that appellant serve the sentences consecutively, is this appeal.

No brief has been presented here on behalf of appellant.

Six assignments of alleged errors appear in the motion for a new trial.

Assignments one, two and three question the sufficiency of the evidence, the fourth alleged that "the court erred in permitting the witness, Deputy Sheriff Weaver, to testify that the defendant admitted to him that he, the defendant, had forged and uttered another check or checks not related to the check on which de-

fendant was being tried, other indictments or informations having been filed and being now pending against the defendant, the fifth alleged error, in permitting witness, Weaver, "to read a statement previously given by the defendant, according to the testimony of the witness, admitted giving numerous checks which were forged and of uttering same, although defendant had been held in jail from Saturday until Tuesday without having had the opportunity to advise with counsel," and in the sixth assignment, appellant asserts that "the State did not establish venue," that is, "the State did not prove in what county the alleged crimes were committed."

The instructions were not questioned.

## 1, 2 and 3

Witness, Sol Davidson, on behalf of the State, testified that he was part owner of a store at Marvell, Arkansas, and "Q. On December 18th were you in the store and did you cash a check in the amount of twenty dollars made out by John L. Turner? A. I cashed that and deposited it myself, that is S. Davidson & Son, by me. Q. Who did you cash it for? A. It turned out that it was Henry McGehee (appellant), I didn't know his name at that time, but I knew the darky. Q. At that time he represented himself to be Willie Hoskins? A. Yes, sir. Q. Did he make a purchase of some merchandise? A. Yes, sir. Q. And he received the balance in change? A. Yes, sir. Q. Did you deposit the check for payment? A. Yes, sir. Q. Was it returned to you? A. Yes, sir, it was, they said that it was not Mr. Turner's signature. . . . Q. When was the next time you saw him? A. He came in one time later on and brought a check and gave it to my brother and he said, 'Does this look like John W. Hall's signature?' and I said, 'I don't think it is,' and I asked him if it was the same darky and I went up there and I said, 'That is the man,' and I said 'Is this John W. Hall's signature?' and he said' 'It is.' I said, 'We will call up and see.' He didn't try to fight, he tried to run away, I guess I would have done the same thing. . . . After we scuffled a little I went down and got Mr. Herbert Manning and he came up and got

him. Q. Did he admit that he was the one that cashed the check before? A. Yes, sir. Q. What caused the mangled condition of the check? A. He grabbed it.''

John L. Turner testified that he did his banking business with the Bank of Marvell. He did not issue or sign the check in question and did not authorize any one to issue and sign it.

L. D. Weaver, Deputy Sheriff of Phillips county, testified that appellant was arrested on Saturday night, January 10, 1948, and placed in the Phillips County Jail and thereafter on Tuesday, January 13, appellant was brought from the jail to the sheriff's office where, in the presence of the witness, Clay Oliver, the jailer, John Anderson, and Miss Helen Meek, stenographer, voluntarily and without any threats, coercion or inducement of any kind, made and signed the following statement: ''Q. What is your name and where do you live? A. Henry McGehee, Jr., and I live on Br. Bryant's place near Marvell now. I came here from Omaha, Nebraska, in November of last year. Q. Did you write out and cash this check I show you drawn on the Bank of Marvell in the amount of $10 payable to Demsy Woods and signed J. W. Hall? A. Yes, sir, I wrote it out and cashed it at Mr. Taylor's liquor store in Marvell, I got a half-pint of whiskey and the rest in change. Q. Did you write out and cash this check I show you drawn on the Bank of Marvell in the amount of $20 payable to Willie Hoskin and signed John L. Turner? A. Yes, sir, I wrote it out and cashed it at Mr. Davidson's in Marvell, I got a shirt and a necktie and two pair of socks and the rest in change. Q. Did you write out and cash this check I show you in the amount of $20 drawn on the Bank of Marvell payable to Henry Parks and signed J. W. Hall? A. Yes, sir, I wrote it out and went in Mr. Davidson's store to cash it. I gave it to Mr. Abe this time and took it back and gave it to Mr. Sol and then they got suspicious of it being the same as the other and they grabbed me. They had an axe handle and I tried to get away, but couldn't. Q. How did the check get so wrinkled? A. They had laid it down on the counter and I picked it up and squeezed it in my hand when I tried

to get away. Q. Did you write out these two sample checks on the Phillips National Bank in order that the officers could campare your writing? A. Yes, sir, I wrote them out. This statement has been read to me and is correct. I make it freely and voluntarily and without any hope or offer of reward being held out to me and after I have been warned that anything I might say can be used for me or against me in court. /s/ Henry Mc-Gehee, Jr. Subscribed and sworn to before me this the 13th day of January, 1948. /s/ Helen Meek, Notary Public. (Seal) My commission expires 3-14-48.''

Following this confession, appellant was returned to the jail. At the time appellant made and signed the statement, he made no request for counsel or that counsel on his behalf be present.

Appellant did not testify and offered no witness in his defense.

The evidence abundantly supported the verdicts in this case, in fact, it appears undisputed that appellant forged the check in question, represented himself to be Willie Hoskin, forged Hoskin's signature and endorsement on the check and cashed it as indicated above.

### 4 and 5

There was no error in admitting appellant's statement or confession in the circumstances here. It is undisputed that it was made freely, voluntarily, without inducement or promise of reward or coercion and when so made, we have repeatedly held such statements to be admissible in evidence. Some of our latest cases on this point are: *Bly* v. *State,* 213 Ark. 859, 214 S. W. 2d 77; *Bates* v. *State,* 210 Ark. 1014, 198 S. W. 2d 850; and *Thomas* v. *State,* 210 Ark. 398, 196 S. W. 2d 486.

The confession or statement of appellant made in the absence of counsel was not rendered inadmissible for that reason, since it is undisputed that appellant, as indicated, made no request for the presence or advice of counsel. We so held in *Thomas* v. *State, supra,* (Headnote 2): ''The general rule is that where a confession has been freely and voluntarily made by the

accused in the absence of counsel and without any request for the presence of counsel, the confession is admissible in evidence."

The trial court did not err in admitting evidence of other forgeries or crimes committed by appellant shortly before or after the offenses for which he was being tried, since this testimony tended to show a general scheme, plan or course of dealing. (*Singer* v. *State,* 195 Ark. 345, 112 S. W. 2d 426.)

In *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468, this court said: " 'The evidence of the commission of other crimes of a similar nature about the same time, however, tends to show the guilt of the defendant of the crime charged when it discloses a criminal intent, guilty knowledge, identifies the defendant, or is part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other.' See, also, the confirmation of this rule in the cases of *Cain* v.*State,* 149 Ark. 616, 223 S. W. 779; *Yelvington* v. *State,* 169 Ark. 359, 275 S. W. 701; *Wilson* v. *State,* 184 Ark. 119, 41 S. W. 2d 764," and in the *Wilson* v. *State* case, *supra,* we said: "As a general rule, it must appear that the evidence of other offenses relate to offenses that occurred shortly before or after the commission of the offense for which the accused is being tried. . . . Evidence of similar forgeries is admissible to show a uniform course of acting from which guilty knowledge and criminal intent may be inferred. In other words, the evidence of other forgeries is admissible, not to prove the commission of the crime for which the party is being tried, but to prove guilty knowledge or intent. Underhill's Criminal Evidence, § 629. . . . Evidence of distinct offenses of the same character committed by the accused is admissible, though not contemporaneous nor a part of the same transaction, if it shows or tends to show that the accused had adopted the same plan to utter forged instruments in other cases as is charged by the prosecution in the case on trial. 12 R. C. L. 168."

6

On the question of venue, jurisdiction of the trial court must be presumed unless the evidence affirmatively shows otherwise. § 26 of Initiated Act 3 of 1936, Acts 1937, p. 1384, appearing as 4 Ark. Stats., § 43-1426, provides: "It shall be presumed upon trial that the offense charged in the indictment was committed within the jurisdiction of the court, and the court may pronounce the proper judgment accordingly, unless the evidence affirmatively shows otherwise." (This section does not appear in Pope's Digest.)

In the present case, there was no affirmative evidence to the contrary. *Ahart* v. *State,* 200 Ark. 1082, 143 S. W. 2d 23; *Wise* v. *State,* 204 Ark. 743, 164 S. W. 2d 897.

Finding no error, the judgment is affirmed.