C. Carlton SMITH *v.* STATE of Arkansas

CA CR 79-23                          587 S.W. 2d 50

Opinion delivered September 5, 1979
and released for publication September 26, 1979

*James K. Young,* by: *Luther B. Hardin,* for appellant.

*Steve Clark,* Atty. Gen., by: *Robert J. DeGostin, Jr.,* Asst. Atty. Gen., and *James T. Pitts* and *Richard Callaway,* for Securities Department, for appellee.

JAMES H. PILKINTON, Judge. Appellant C. Carlton Smith, Jr. was convicted of violating the Arkansas Securities Act, Ark. Stat. Ann. § 67-1235 (Repl. 1966) and was fined $5,000. He has appealed and the case was assigned to the Arkansas Court of Appeals under Rule 29(3) of the Arkansas Supreme Court.

The conviction arose from an alleged offer and sale of stock by appellant to Michael Wilkins of Russellville, Arkansas. It was charged that Smith wilfully employed a device, scheme or artifice to defraud by making untrue statements and failing to reveal material facts.

Mike Wilkins was in the radio repair business and first met C. Carlton Smith in early May, 1976, when Smith entered Wilkins' place of business in Russellville. Smith said he represented Memphis Mobile Telephone Company, Inc., and was investigating the feasibility of establishing a common carrier radio system in Russellville. He asked Wilkins if he would be interested in servicing the equipment as some local person was needed for that purpose. Smith also said he was looking for a local investor. Wilkins expressed interest, and when Smith came back to see Wilkins a few days later he had Articles of Incorporation with him for a new Arkansas corporation called Russellville Radio Telephone Company. Smith had drawn the incorporation papers without help of an attorney, and had previously filed the document with the Secretary of State on May 5, 1976. He asked Wilkins to file these papers with the local county clerk.

Smith strongly denied at the trial that he made any of the alleged untrue statements or failed to reveal any of the alleged material facts. However the jury verdict on the disputed evidence settled that phase of the case. The sufficiency

of the evidence to support that feature of the case is not questioned on appeal. It is undisputed that Smith also prepared a *Memorandum of Understanding* for Wilkins to sign dated May 9, 1976, and that this document was executed in Russellville. Wilkins gave Smith a total of $5,000 in three separate checks at different times. It is also undisputed that Smith caused 500 shares of Russellville Radio Telephone Company stock to be issued to Wilkins, and that Wilkins lost his money.

## I.

Appellant first argues the trial court erred in not directing a verdict for defendant claiming no sale of stock took place within the meaning of the Arkansas Securities Act. Appellant says the transaction was a joint venture with Memphis Mobile Telephone Company and Wilkins. We find no merit in this contention. A promoter cannot avoid the requirements of the Securities Act by simply labeling or calling his enterprise a joint venture when in fact such transaction was something different. As stated by the Arkansas Supreme Court in *Schultz* v. *Rector Morris, Inc.*, 261 Ark. 769, 552 S.W. 2d 4 (1977):

> This court recognizes that regardless of labels, the Arkansas Security Act was designed to protect both investors in common stock and those persons who in substance are investors in the disguised business venture of another.

The obvious purpose of all securities acts is to protect the general public. The U.S. Supreme Court said that the Securities Act of 1933 was designed to protect investors by promoting full disclosure of information thought necessary to informed investment decisions. *S.E.C.* v. *Ralston Purina Co.*, 346 U.S. 119, 73 S. Ct. 981, 97 L. Ed. 1494 (1953). That is also true of the Federal Uniform Securities Act after which the Arkansas statute is modeled.

As stated by Professor Long in "An Attempt to Return Investment Contracts to the Mainstream of Regulations", 24 Okla. L. Rev. 135 (May 1971), there are five significant com-

mon characteristics of traditional securities. These common factors can be used to establish a uniform test for the identification of all securities, whether of a specific type or of a general nature, intended to be covered by the act in question, unless a specific contrary definition is contained therein. These elements are: (1) the investment of money or money's worth; (2) investment in a venture; (3) the expectation of some benefit to the investor as a result of the investment; (4) contribution towards the risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture. Professor Long summarized by stating that a security is an investment of money or money's worth in the risk capital of a venture with the expectation of benefit to the investor where the investor has no direct control over the investment or policy decisions of the venture. There is no indication in the record before us that the *Memorandum of Understanding* drafted by appellant in this case, or the stock subsequently issued to Wilkins possesses any special attributes which require them to be treated differently from other forms of securities. This transaction was clearly within the meaning of the Arkansas Securities Act. To hold otherwise would set up a barrier to proper regulation under the act.

## II.

Appellant argues as his second point that assuming a "sale" did take place within the meaning of the act, the Circuit Court of Pope County, Arkansas, was without jurisdiction. The evidence shows four separate transactions between defendant C. Carlton Smith and Michael Wilkins: (1) the execution of the Memorandum of Understanding in Russellville on May 9, 1976; (2) the first payment of $345 by Wilkins to Smith at Russellville on May 10; (3) the payment of $800 on June 7 by check drawn on a bank in Pope County; and (4) the $3,855 check to Smith drawn by Wilkins on a bank in Pope County, dated June 10, together with a receipt by Wilkins of Stock Certificate No. 2 issued by Russellville Radio Telephone Company, an Arkansas corporation, for 500 shares. Any one of these transactions would support the jury's verdict. *State v. Swain*, 31 P. 2d 745 (Ore. 1934), *Green v. Weis, Voison, Cannon, Inc.*, 479 F. 2d 462 (7th Cir. 1973). To

construe the language of the statute otherwise would permit an issuer or dealer to solicit sales at will in Arkansas without complying with our statute so long as an act entirely within his control, such as placing the proceeds in a bank account or issuing stock certificates, was performed at or from another state. To employ the meaning of the word "sale" ascribed to it by the appellant would convert our state into a safe retreat where unscrupulous dealers in securities could ply their vocation provided they did not make actual delivery of stock in this state. *State* v. *Swain,* supra. We find no merit in the second point urged by appellant. See also Ark. Stat. Ann. § 67-1260(c) (Repl. 1966); *Shappley* v. *State,* 520 S.W. 2d 766 (Tex. Crim. App. 1974).

## III.

Appellant next claims the trial court erred in allowing testimony covering prior dealings involving stock transactions defendant had with other individuals. In admitting testimony of this kind, the court has two criteria as a guide. The previous conduct must not be too remote from the offense charged and it must be similar in nature to the offense charged. When such evidence is admitted it must be accompanied by a limiting instruction which the court in this case gave. Appellant does not question the instruction given and does not raise the question of the similarity of acts, but does claim that the other similar acts were too remote. He contends that in *Carter* v. *United States,* 549 F. 2d 77 (1977) the court held the only evidence of other crimes permissible under Rule 404(b) is where they are in immediate context or res gestae of the offense on trial. While the court in *Carter* did recognize the res gestae rule, it did so by expanding Rule 404, not limiting it. See 41 ALR Fed. 515. The case of *Cary* v. *State,* 259 Ark. 510, 534 S.W. 2d 230 (1976) made it clear the matter of remoteness is addressed to the sound judicial discretion of a trial judge, which will be interfered with by a reviewing court only when it is clear the questioned evidence has no connection with the case. *Caton* v. *State,* 252 Ark. 420, 479 S.W. 2d 537 (1972). The court in *People* v. *Dunn,* 40 Cal. App. 2d 6, 104 P. 2d 119 cert. den. 311 U.S. 701, 85 L. Ed. 454, 61 S. Ct. 139 (1940), found that five years between acts was not too remote.

Evidence of similar offenses has been admitted in violations of state security laws in other jurisdictions for the purpose of showing a common scheme or plan. *People v. Dutton,* 107 P. 2d 937 (1940).

We hold the evidence of other prior similar transactions involving the offer and sale of securities by appellant was properly admitted to show habit and practice of Smith and Memphis Mobile Telephone, operated by Smith, in the normal course of business. *Tolbert v. State,* 244 Ark. 1067, 428 S.W. 2d 264 (1968); *Wilson v. State,* 184 Ark. 119, 41 S.W. 2d 764 (1931); and *McGhee v. State,* 214 Ark. 221, 215 S.W. 2d 135 (1948). It was also properly admitted to show a common scheme, plan and course of dealing by appellant. *Kerby v. State,* 233 Ark. 8, 342 S.W. 2d 412 (1961).

## IV.

Appellant claims that the trial court erred, in light of defense counsel's continuing objection, in allowing the prosecuting attorney to attack the character of Carlton Smith. We need not reach this issue as it was not raised at the trial level, and the judge had no opportunity to consider the matter. Points raised for the first time on appeal will not be considered. *Hilliard v. State,* 259 Ark. 81, 531 S.W. 2d 463 (1976); and *Ford v. State,* 253 Ark. 5, 484 S.W. 2d 90 (1972).

## V.

It is also claimed that the court erred in not granting a mistrial on the basis of a reference made by Michael Wilkins to a prior arrest of defendant Smith in Mississippi. The witness Wilkins was explaining why he was upset and, in answering a question about that fact, made what appellant admits in his brief was an off-the-cuff reference to an arrest of Smith as having occurred on a Mississippi warrant at the apartment in Russellville which was also being used by Smith as a temporary office for Russellville Radio Telephone Company.

Declaring a mistrial is an extreme remedy granted only when the error is so prejudicial that justice cannot be served

by a continuation of the trial. Motion for a mistrial should not be granted when any possible prejudice can be removed by an admonition to the jury. *Limber* v. *State,* 264 Ark. 479, 572 S.W. 2d 402 (1978); *Gammel & Spears* v. *State,* 259 Ark. 96, 531 S.W. 2d 474 (1976). After overruling defendant's motion for a mistrial, the court admonished the jury:

> BY THE COURT: I will instruct the jury to disregard the testimony, with respect to any other arrest anywhere else. Can all of you assure me, ladies and gentlemen, that you will disregard that testimony? Let me see by a showing of hands. Let the record reflect that the jury unanimously indicated that they will disregard that testimony.

We cannot see, under the circumstances, that appellant was prejudiced by this reference, but if there was any prejudice, it was removed by the admonition of the court. *Johnson* v. *State,* 254 Ark. 293, 493 S.W. 2d 115.

## VI.

Appellant finally argues that the court erred in failing to advise the jury it must find that defendant wilfully employed a device to defraud. This case was carefully tried by the court below and no objection was made to any of the instructions given at the conclusion of the evidence. However, the jury after some deliberations returned and asked the court:

> MR. JONES (Foreman): If we have evidence to prove that one or more of these things were done by the defendant, is that sufficient to convict the defendant or can we decide that one or more of these items is not relevant to the law?

> BY THE COURT: No Sir. If you found that one or more of those items were actually committed by the defendant, beyond a reasonable doubt, then it is your duty to convict. On the other hand, if you should find that he is guilty of none of those items on there, then it is your duty to acquit him.

BY MR. YOUNG: May I make an objection to that?

BY THE COURT: Yes, sir.

MR. YOUNG: We object to that statement. We feel like they have to find that one of those items resulted in fraud.

It is evident that reference was being made by the jury and court to the instructions in the case. The court then offered to re-read the entire instructions to the jury, but the foreman said this was not necessary as they had all the written instructions before them in the jury room.

We are at a disadvantage in giving consideration to this point. The Information is not abstracted and we have examined the record and do not find it included. We must assume that the Information was properly drawn and followed the language in Section 1 of the act. The wording of the instructions given so indicates. The trial court had previously instructed the jury that an act is done "wilfully" if it is done knowingly and deliberately with bad purpose.

Section 1 of the act has three subparts. We must also assume that the subparts, including subpart (2) relating to the making of a material misstatement or omitting to state a material fact, were connected in the Information. Appellant cites no authority in support of his point VI so we need not consider it on appeal. *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606, 609 (1977).

Finding no error, the judgment is affirmed.