SLIP OPINION

Cite as 2015 Ark. 272

# SUPREME COURT OF ARKANSAS

No. CV-15-18

| | |
|---|---|
| B. EDMOND WATERS, ARKANSAS SECURITIES COMMISSIONER <br><br> APPELLANT <br><br> V. <br><br><br> ISAAC HAL MILLSAP III, GIFFORD KEITH JORDON, and CHARLES DUANCE SOLUM <br><br> APPELLEES | **Opinion Delivered** June 18, 2015 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-12-383] <br><br> HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE <br><br><br> REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

This case involves a civil regulatory action filed by the Arkansas Securities Commissioner, B. Edmond Waters (Commissioner), in his official capacity, against three individuals, Isaac Hal Millsap III, Gifford Keith Jordon, and Charles Duance Solum.[1] The Commissioner's complaint alleged two violations of the Arkansas Securities Act (the Act), codified at Arkansas Code Annotated sections 23-42-101 through –509. In his complaint, the Commissioner alleged that the appellees engaged in the sale of unregistered securities, in the form of notes for real estate loans with a fixed rate of interest, and offering and selling securities despite not being licensed as a brokers or agents. The circuit court concluded that the notes at issue were not securities based on the test announced by the Arkansas Court of

---

[1]The complaint in this case was filed by Waters's predecessor, A. Heath Absure. Waters was appointed Commissioner on February 10, 2015, and was substituted as the plaintiff in his official capacity.

Appeals in *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50 (Ark. App. 1979). On appeal, the Commissioner contends that the circuit court erred in concluding that the notes were not securities, that this court has never explicitly adopted the *Smith* test as the exclusive test of whether a transaction is a security, and that the element of a fixed rate of interest does not automatically preclude the notes at issue from being securities. In addition, the Commissioner urges this court to adopt the Family Resemblance Test adopted by the United States Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990). Because this case involves issues of substantial public interest and a perceived inconsistency between opinions from this court and the court of appeals regarding the proper test for determining what constitutes a security, our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1–2(b)(2) and (4).

On January 1, 2012, the Commissioner filed a complaint against the appellees in the Pulaski County Circuit Court. In his complaint, the Commissioner alleged that from 2001 through 2009, appellee Millsap did business with the British American Group (BAG), which purportedly matched borrowers from the United Kingdom with lenders. According to the complaint, the borrowers would borrow money for real–estate projects at interest rates of 15% to 17% per annum. The complaint alleged that Millsap would approach individuals and tell them about the business and ask them to invest or loan their money as a lender to a borrower in the United Kingdom through BAG. In doing so, Millsap relied on a page of facts and information, referred to as the "Highlights" page, regarding the risks and returns on the investments. The complaint further alleged that investors would write a check to BAG and fill out some paperwork and several weeks later Millsap would send them a document entitled

Cite as 2015 Ark. 272

Loan Agreement, which set out a contract between the investor as the lender and the borrower, a British business entity conducting real-estate development. This note would be for a term of one year, the Commissioner alleged, and the annual interest rates varied from 14.5% to 17.5%. In addition, the complaint stated that investors could elect to compound their interest or receive periodic payments and were encouraged to "roll over" their notes to extend the term past one year. According to the complaint, Millsap was paid a commission of .5% to 8% of the investment upon the initial investment and received an additional commission upon rollover of the note. The complaint alleged that the appellees sold a total of twenty notes with a total value of $1,907,881.41, and received commissions for each of these sales.

According to the complaint, Millsap enlisted Jordon and Solum to solicit investors with BAG and sell the notes. Jordon and Solum also received commissions based on soliciting investors. In addition, Millsap received a commission of .5% for Jordon's and Solum's sales. The complaint alleged that Jordon sold BAG notes from 2008 through 2010 and that Solum did the same in 2008 and 2009. The complaint alleged that, although some of the BAG investors received interest payments, the "vast bulk of the money was never repaid." Thus, while the complaint acknowledged that the investors were "guaranteed a specific return on their money," it alleged that the investors had no control over the real estate projects and "expected their profits to come solely from the efforts of the borrower." Finally, the complaint alleged that each note was a security, was not registered, and that Millsap, Jordon, and Solum were not registered to sell securities. The Commissioner requested that the

appellees be restrained and enjoined from continuing to sell the notes, be ordered to render an accounting of all monies received and disbursed in connection with the notes, be ordered to disgorge all monies raised, and be ordered to pay a fine.

On August 3, 2012, the appellees filed an answer denying that notes were securities. On April 23, 2014, the Commissioner filed separate motions for summary judgment against Jordon and Solum. In his motion, the commissioner contended that the proper test for determining whether an instrument constituted a security is the so-called "family resemblance test," which was announced by the United States Supreme Court in *Reves*. On May 14, 2014, Jordon filed a response and cross-motion for summary judgment. In his motion, Jordon contended that the proper test was the test announced in *Smith*. Jordon contended that this court has adopted that test but has not adopted the family resemblance test. As a result of these two motions, the following facts were undisputed:

1. Interested lenders and borrowers would enter into loan agreements structured with one-year fixed rates of interest.
2. Lenders expected to receive interest payments reflective of the interest rates and principal amounts agreed to in the loans.
3. The loans had a fixed rate of interest.
4. The borrower's obligation to repay the loan was not based on the financial performance of the borrower's endeavor.
5. The appellees utilized the highlights page to promote the loans.
6. According to the highlights page, the more principal invested, the higher the interest rate on the loans.

The circuit court held a hearing on the cross-motions for summary judgment on July 30, 2014. The circuit court entered a written order on September 17, 2014. In that order, the court granted summary judgment in favor of the appellees and determined that the notes did not constitute securities. Specifically, the court found that there were no issues of fact and

but one issue of law, whether certain instruments entitled "loan agreements" are securities within the meaning of the Act. The court characterized the facts of the transactions at issue as follows:

> Jordon contends that his role was to match lenders with one borrower in the United Kingdom. Because the loans were secured by collateral and had a fixed interest rate which was payable in one year regardless of the success of the real estate development, and the persons making this loan had no opportunity to participate in the earnings of the borrower and had no opportunity to participate in the earnings of the borrower [sic], Jordon contends that these transactions were loans and not securities.
> . . . .
> [The Commissioner] on the other hand contends that these transactions were investments which were securities both as investment contracts . . . and as notes . . . It matters not, according to [the Commissioner] . . . that these instruments promise only a fixed rate of return and allow no opportunity to participate in the earnings or profit of the borrower in the United Kingdom.
> The Arkansas Supreme Court has not adopted the *Reves* family resemblance test or *SEC v. Edwards* . . . and the law in Arkansas remains *Smith v. State*. . . . The instruments here in question do not qualify as securities under that test.

After concluding that the notes at issue did not meet the test for securities announced in *Smith*, the circuit court granted summary judgment in favor of Jordon. The circuit court also granted summary judgment in favor or Millsap and Solum on the basis that their position was the same as Jordon's and the Commissioner had the opportunity to respond to Jordon's motion. On October 10, 2014, the Commissioner filed a timely notice of appeal from the circuit court's ruling.

To reiterate, on appeal the Commissioner contends that the circuit court erred in concluding that the notes were not securities, that this court has never explicitly adopted the *Smith* test as the exclusive test of whether a transaction is a security, and that the element of a fixed rate of interest does not automatically preclude the notes at issue from being securities.

In addition, the Commissioner urges this court to adopt the family resemblance test from *Reves*.

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, 437 S.W.3d 80. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *See id.* When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *See id.* As to issues of law presented, our review is de novo. *Crafton, Tull, Sparks & Assocs., Inc. v. Ruskin Heights, LLC*, 2015 Ark. 1, at 5, 453 S.W.3d 667, 671. The point of law at contention in this appeal is simply stated: What is the proper test for determining whether an instrument constitutes a security under Arkansas law?

To answer this question, we must turn first to the Act and then to cases interpreting that Act. At the time the Commissioner filed his complaint, the Act included "any" note among the list of instruments constituting securities. Ark. Code Ann. § 23-42-102(15)(A) (Supp. 2011).[2] At the time the Act was adopted, Arkansas's definition of "security" was

---

[2]The statute defined security to mean any:
     (i) Note;
     (ii) Stock;
     (iii) Treasury stock;
     (iv) Bond;
     (v) Debenture;
     (vi) Evidence of indebtedness;

SLIP OPINION

borrowed from the Securities Act of 1933 and remains essentially the same as the federal

designation.[3]  Our present law was enacted during the 1979 legislative session.  State securities

laws were enacted to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant

gold mines, and other like fraudulent exploitations.  *Hall v. Geiger-Jones Co.*, 242 U.S. 539,

550 (1917).  Notably, Arkansas's statutory definition of "security" has included "any note"

---

(vii) Certificate of interest or participation in any profit-sharing agreement;
(viii) Collateral-trust certificate;
(ix) Preorganization certificate or subscription;
(x) Transferable share;
(xi) Investment contract;
(xii) Variable annuity contract;
(xiii) Life settlement contract or fractionalized or pooled interest in a life settlement contract;
(xiv) Voting-trust certificate;
(xv) Certificate of deposit for a security;
(xvi) Certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or
(xvii) In general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Ark. Code Ann. § 23-42-102(15).

[3]Pursuant to the federal statute:

The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C.A. § 77b(a)(1).

at all times relevant to this litigation.

Prior to the 1979 session, this court decided *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977), and held that the definition of a security within the meaning of the Act should not be given a narrow construction, but should be determined in each instance from a review of all the facts whether an investment scheme or plan constitutes an investment contract, or a certificate of interest or participation in a profit–sharing agreement, within the scope of the statute. *Id.* at 781, 552 S.W.2d at 11. Although we examined definitions from other jurisdictions, including the test applied in *Securities & Exchange Commission v. Howey Co.*, 328 U.S. 293 (1946) (defining an unconventional security as an "investment contract" under the Federal Securities Laws) and *Hawaii v. Hawaii Market Center, Inc.*, 52 Hawaii 642, 485 P.2d 105 (Haw. 1971) (holding that an "investment contract" is created whenever: (1) An offeree furnishes initial value to an offeror; and (2) a portion of this initial value is subjected to the risks of the enterprise; and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise; and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise), we declined to adopt a mechanical formula. Instead, we agreed with the more flexible approach endorsed in *Minnesota v. Investors Security Corporation*, 209 N.W.2d 405 (Minn. 1973). With regard to the Minnesota view, this court stated:

> We agree with the general approach taken by the Minnesota Supreme Court that the
> definition of a security within the meaning of the Arkansas Securities Act should not

be given a narrow construction, and that it is better to determine in each instance from a review of all of the facts, whether an investment scheme or plan constitutes an investment contract, or a certificate of interest or participation in a profit-sharing agreement, within the scope of the statute.

*Schultz*, 261 Ark. at 781, 552 S.W.2d at 10.

Subsequently, in 1979, the Arkansas Court of Appeals decided *Smith v. State*, and adopted a five-element test for identifying securities: (1) the investment of money or money's worth; (2) investment in a venture; (3) the expectation of some benefit to the investor as a result of the investment; (4) contribution towards the risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture.[4] 266 Ark. at 865, 587 S.W.2d at 52. The transaction at issue in *Smith* involved the appellant's failed attempt to start a business called the Russellville Radio Telephone Company with the appellee. The appellant, who represented himself to be part of Memphis Mobile Telephone Company, Inc. (Memphis Mobile), sold 500 shares of stock to the appellee for a total of $5,000. The business failed, and the appellee filed suit after being unable to recover the $5,000 he had given to the appellant. Although the appellant characterized the enterprise as a "joint venture" between Memphis Mobile and the appellee, the court of appeals disagreed and concluded, after applying the five-element test, that the transaction met the test for being

---

[4]The court of appeals derived this test from an article in the Oklahoma Law Review:

As stated by Professor Long in "An Attempt to Return Investment Contracts to the Mainstream of Regulations," 24 Okla. L. Rev. 135 (May 1971), there are five significant common characteristics of traditional securities. These common factors can be used to establish a uniform test for the identification of all securities, whether of a specific type or of a general nature, intended to be covered by the act in question, unless a specific contrary definition is contained therein.

*Smith*, 266 Ark. at 864–65, 587 S.W.2d at 52.

considered a security. The court concluded that the "joint venture" label was not determinative of whether the transaction constituted a security. *Id.* at 864, 587 S.W.2d at 52 ("This court recognizes that regardless of labels, the Arkansas Security Act was designed to protect both investors in common stock and those persons who in substance are investors in the disguised business venture of another.") (citing *Schultz*, 261 Ark. 769, 552 S.W.2d 4). The court of appeals summarized the definition of a security as follows: a security is an investment of money or money's worth in the risk capital of a venture with the expectation of benefit to the investor where the investor has no direct control over the investment or policy decisions of the venture. *Id.* at 865, 587 S.W.2d at 52.

Since *Smith*, this court has addressed the question of whether particular instruments constituted a security. For instance, in *Grand Prairie Savings & Loan Association v. Worthen Bank & Trust Co.*, 298 Ark. 542, 769 S.W.2d 20 (1989), which involved a commercial loan transaction, this court discussed the five-element *Smith* test. We determined that the test used in *Smith* is substantially the same as the test used in the federal courts. *Id.* (citing *Union Nat'l Bank v. Farmers Bank*, 786 F.2d 881 (8th Cir. 1986) (finding no error in the trial court's determination that the *Smith* factors, which are used to identify a security under Arkansas law, were "substantially similar" to the test in *Howey*, which is used to identify a security under federal law). Despite this determination, we did not utilize the *Smith* factors. Instead, this court relied on its prior statement in *Schultz* that the definition of what constitutes a security must necessarily depend on an analysis of all of the factors in any given transaction. *Id.* at 545, 769 S.W.2d at 22. We determined that the instrument at issue did not constitute a security

because the evidence in the lower court disclosed that the transaction was between two sophisticated parties. *Id*. at 546, 769 S.W.2d at 22.

Subsequently, in 1991, we did apply the five-factor *Smith* test to a transaction involving the sale of stock. *Cook v. Wills*, 305 Ark. 442, 447, 808 S.W.2d 758, 761 (1991). However, we acknowledged that, pursuant to *Schultz*, we analyze all of the factors in any given transaction. Six years later, this court again acknowledged the existence of the *Smith* test, but did not explicitly analyze all five factors. *Carder v. Burrow*, 327 Ark. 545, 940 S.W.2d 429 (1997) (holding that a transaction involving loan to corporation, which paid a fixed interest rate of five percent per annum above the federal discount rate calculated at time of loan, did not constitute a security). We again cited to *Schultz* to support our conclusion that "the trial judge was correct in examining all of the factors involved in the execution of this transaction in determining that the transaction . . . was an ordinary secured commercial loan between two parties, not the sale of a security as defined in the Arkansas Securities Act." *Carder*, 327 Ark. at 550, 940 S.W.2d at 432.

Despite these prior cases, Waters urges this court to abandon the *Schultz* and *Smith* tests and adopt the family resemblance test announced in *Reves*, a case that originated in the United States District Court for the Western District of Arkansas. The financial transaction involved in *Reves* was summarized by the Court as follows:

> The [Farmer's Cooperative of Arkansas and Oklahoma] is an agricultural cooperative that, at the time relevant here, had approximately 23,000 members. In order to raise money to support its general business operations, the Co-Op sold promissory notes payable on demand by the holder. Although the notes were uncollateralized and uninsured, they paid a variable rate of interest that was adjusted monthly to keep it higher than the rate paid by local financial institutions. The Co-Op

11

offered the notes to both members and nonmembers, marketing the scheme as an "Investment Program."

494 U.S. at 58–59.

The *Reves* Court resolved a circuit split and held that, when determining whether an instrument denominated a "note" is actually a "security" within the meaning of the Securities Exchange Act, courts should apply the "family resemblance" test developed by the Second Circuit. 494 U.S. 56. Under that test, a note is presumed to be a "security," but that presumption may be rebutted by showing that the note bears a strong resemblance, determined by examining four specified factors, to a list of categories of instruments that are not securities.[5] If an instrument is not sufficiently similar to a listed item, courts must decide whether another category should be added by examining the same four factors. The four factors involved in the family resemblance test are:

> First, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash–flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security." Second, we examine the

---

[5] In order to rebut the presumption that a note is a security, there must be a showing that the note bears a strong resemblance to one of six enumerated categories of instruments:
  (1) a note delivered in consumer financing;
  (2) a note secured by a mortgage on a home;
  (3) a short-term note secured by a lien on a small business or some of its assets;
  (4) a notice evidencing a "character" loan to a bank customer;
  (5) a short term note secured by an assignment of accounts receivable; or
  (6) a note that simply formalizes an open–account debt incurred in the ordinary course of business, particularly if, as in the case of the customer of a broker, it is collateralized.

"plan of distribution" of the instrument, to determine whether it is an instrument in which there is "common trading for speculation or investment." Third, we examine the reasonable expectations of the investing public: The Court will consider instruments to be "securities" on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction. Finally, we examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.

*Id.* at 66–67 (internal citations omitted). At this time, we decline to adopt the *Reves* test because all of these factors are embraced within our flexible, all-inclusive *Schultz* test.

Moreover, while we have found the *Smith* factors to be instructive, this court has never relied on those factors exclusively. The unifying thread in our cases addressing whether an instrument constitutes a security is the *Schultz* test, which requires a review of all of the facts. Here, the circuit court considered only the *Smith* factors, concluding that "the law in Arkansas remains *Smith v. State*, *supra*. The instruments in question here do not qualify as securities under that test." The circuit court did not mention *Schultz* and failed to consider the sophistication of the parties, a factor that is prominent in this court's prior cases. While the *Smith* test remains instructive, we find that the all-inclusive nature of the *Schultz* test is better suited to the purposes of the Act. The Act is clearly remedial and is intended to prevent fraudulent practices and activities from becoming a burden upon unsophisticated investors and the general public. *Grand Prairie*, 298 Ark. at 546, 769 S.W.2d at 22. Therefore, we reverse and remand this case to the circuit court to consider all factors surrounding the transaction, as required by *Schultz*.

Reversed and remanded.

13

SLIP OPINION

HANNAH, C.J., and DANIELSON and HART, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** I would affirm the circuit court's ruling that the loan transactions at issue were not securities within the purview of the Arkansas Securities Act, currently codified at Arkansas Code Annotated §§ 23-42-101 to -509 (Repl. 2012 & Supp. 2013). Even if the circuit court's order fails to mention any reliance on *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977), that decision and its all-factor consideration was well argued before the circuit court, and I believe that under our de novo review, the circuit court's ruling can be affirmed as reaching the right result. *See Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001) (recognizing that this court will affirm a trial court when it has reached the right result, even though it may have announced the wrong reason). I therefore respectfully dissent.

From my review of the record, the transactions in the instant case consisted of private loans by the Appellees' clients that were purportedly secured and made at a fixed rate of interest for a one-year period. As in *Carder v. Burrow*, 327 Ark. 545, 940 S.W.2d 429 (1997), there was no expectation by those extending the loan to profit from the transactions as if they were investments; instead, the sole expectation was the receipt of interest on the loaned amount. But, in addition, even if it could be said that the initial loan was an investment of sorts, there is no evidence that the loan rate was in any way dependent on the borrower's earnings. *See Carder*, 327 Ark. 545, 940 S.W.2d 429. Moreover, while the borrower of the funds allegedly engaged in some type of real-estate venture, the success or failure of the borrower's venture really had no effect on the transaction at all; like a typical loan, the interest

SLIP OPINION

was due the Appellees' clients regardless. Likewise, there was no benefit to be extended as a result of the investment, no contribution to the risk capital of the venture, nor was control an issue because the loan was not tied to the venture's success or failure.

By its very definition, an investment is "[a]n expenditure to acquire property or assets to produce revenue; a capital outlay," which is very different from a loan, defined as "[a]n act of lending; a grant of something for temporary use" or "[a] thing lent for the borrower's temporary use; esp., a sum of money lent at interest." *Black's Law Dictionary* 954, 1077–78 (10th ed. 2014). Indeed, this court has recognized that "the underlying economic substance of a security is an arrangement where the investor is a mere passive contributor of risk capital to a venture in which he has no direct or managerial control." *Casali v. Schultz*, 292 Ark. 602, 605, 732 S.W.2d 836, 837 (1987). There is no such arrangement in the instant case.

Here, the Appellees' clients extended sums of money with the sole expectation of receiving interest and ultimately having their money repaid. Furthermore, their realization of interest was in no way tied to the efforts, successes, or failures of the borrower or venture, but was tied only to the borrower's ability to pay. In light of these circumstances, I cannot say that the transactions at issue were securities; they were simply nothing more than loans, albeit in hindsight, risky ones.

While the Commissioner urges this court to examine the transactions as notes using the federal test set forth by the United States Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990), I, like the majority, see no need to do so. This court has consistently followed *Schultz*, 261 Ark. 769, 552 S.W.2d 4, and looked at all of the factors in any given

transaction, including a consideration of the *Smith* factors when doing so.[6] *See, e.g.*, *Carder*, 327 Ark. 545, 940 S.W.2d 429; *Cook v. Wills*, 305 Ark. 442, 808 S.W.2d 758 (1991); *Grand Prairie Sav. & Loan Ass'n v. Worthen Bank & Trust Co.*, 298 Ark. 542, 769 S.W.2d 20 (1989). That has been the law in Arkansas, and it should remain so.

For the foregoing reasons, I would affirm the circuit court's order.

HANNAH, C.J., and HART, J., join.

*Theodore Holder*, Arkansas Securities Department, for appellant.

*Reece Moore Pendergraft LLP*, by: *Larry McCredy* and *Timothy C. Hutchinson*, for appellees.

---

[6]Notably, the *Carder* opinion made no mention of *Reves* even though it had been decided almost seven years before *Carder* and was discussed in the parties' briefs on appeal.