Cite as 2024 Ark. App. 118

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-22-100

|  |  |
|---|---|
| MONTANA WEINER AND OHANA CONSTRUCTION & PROPERTY MAINTENANCE, LLC **APPELLANTS** | Opinion Delivered February 21, 2024 APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-20-388] |
| V. | HONORABLE JOHN R. SCOTT, JUDGE |
| MERCHANT CAPITAL GROUP, LLC, d/b/a GREENBOX CAPITAL **APPELLEE** | REVERSED AND REMANDED |

**RAYMOND R. ABRAMSON, Judge**

This case concerns an agreement between Merchant Capital Group, LLC, d/b/a Greenbox Capital ("Greenbox") and Ohana Construction & Property Maintenance, LLC ("Ohana"), in which Greenbox purchased future receivables from Ohana. Greenbox brought a breach-of-contract action against Ohana after it failed to make all the payments outlined in the parties' contract. Ohana brought a counterclaim alleging various violations of the Arkansas Securities Act. The counterclaim was dismissed. Ohana now appeals the dismissal, arguing that the contract qualifies as a security under the Arkansas Securities Act.

Because the circuit court did not consider all of the relevant factors to determine whether the contract is subject to the Arkansas Securities Act, we reverse and remand.

## I. *Background*

On August 7, 2018, Ohana entered into a contract titled "Purchase and Sale Agreement" (the "Agreement") with Greenbox. Ohana is a small business in the construction industry owned by Montana Weiner. Ohana and Weiner are the appellants. According to the appellants' counterclaim, Rapid Financial Services, LLC ("Rapid"), first contacted Ohana and solicited it to enter into the Agreement with Greenbox.

Under the terms of the Agreement, Greenbox purchased $12,012 of Ohana's future receivables (the "Purchased Amount") in exchange for $8,400 (the "Purchase Price"). Ohana was to remit to Greenbox approximately 9.70 percent of its daily receivables until the Purchased Amount was reached. Instead of charging a variable sum related to the receivables each day, Greenbox determined the daily payment should be $130.57. After Greenbox transferred the Purchase Price to Ohana, Greenbox began making daily automatic clearinghouse ("ACH") withdrawals from Ohana's bank account. The Agreement stated that at the end of each month, Ohana could petition Greenbox to change the daily payment on the basis of actual sales that month, and Greenbox had sole and complete discretion to determine whether to allow such a change. According to the appellants' counterclaim, Greenbox collected daily payments from Ohana "for a number of months."

On February 4, 2020, Greenbox filed a complaint against the appellants alleging that Ohana had breached the Agreement because the daily ACH payments were rejected by Ohana's bank beginning in October 2018, when approximately $8,000 of the Purchased Amount was still outstanding.

On March 6, the appellants filed a counterclaim and third-party complaint[1] against Greenbox; Rapid; Quicken Loans, Inc.; and Rock Holdings, Inc. The counterclaim alleged that the Agreement was entered in violation of the Arkansas Securities Act and is, therefore, void ab initio. The appellants brought claims for (1) failure of Greenbox to register with the Arkansas Securities Department; (2) promoting securities by an unregistered broker/dealer; (3) violation of Arkansas Code Annotated § 23-42-507 (Repl. 2012); and (4) liability as a secondary offender because Greenbox was aware its representatives, agents, or employees were selling unregistered securities. The appellants sought to rescind the Agreement, recover the money paid to Greenbox, and collect any origination fees or commissions that were paid to Greenbox.

The appellants voluntarily dismissed Quicken and Rock Holdings, and the circuit court dismissed Rapid with prejudice. None of those parties are involved in this appeal.

Greenbox moved to dismiss the counterclaim on May 6, arguing that the claims were barred by the express language of the Agreement, that the purchase of future receivables for a lump sum does not constitute a security under the Arkansas Securities Act, and that if the Agreement is a security, then Ohana was the broker and had the obligation to register.

After a hearing on July 7, the circuit court granted Greenbox's motion to dismiss counts I, II, and IV of the counterclaim, finding that the Agreement did not constitute a security under Arkansas law. The dismissal order states that *Waters v. Millsap*, 2015 Ark. 272,

---

[1]We refer to this as the counterclaim because Greenbox is the only appellee.

465 S.W.3d 851, "established the Arkansas five element test for determining whether the parties' contract dealt with the sale of securities. . . . ." The circuit court proceeded to analyze the five factors articulated in *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50 (Ark. App. 1979), to support dismissing the claims with prejudice. The circuit court amended its dismissal order on August 31 to include count III as well. The amended dismissal order articulated the same test to determine whether the Agreement was a security and contained the same analysis as the initial order.

The appellants moved for reconsideration or a Rule 54 certification. After another hearing on October 1, the circuit court denied these motions and again articulated that *Waters* established a five-factor test for determining whether a contract is a security.

In September 2021, Greenbox's claims were tried in a bench trial. At the close of Greenbox's case, the circuit court granted the appellants' directed-verdict motion, which dismissed all of Greenbox's claims. The earlier dismissal of appellants' claims then became an appealable order. The appellants filed a timely notice of appeal, appealing the order that dismissed their counterclaim, the amended order, and the order denying their motion for reconsideration.

II.  *Standard of Review*

This court reviews a circuit court's order granting a motion to dismiss de novo. *Watkins v. Ark. Dep't of Agric.*, 2018 Ark. App. 460, at 7–8, 560 S.W.3d 814, 821. We will "treat the facts alleged in the complaint as true and view them in the light most favorable to the appellant." *Id.*

4

III. *Discussion*

The three most important cases involved in this appeal are *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977); *Smith*, 266 Ark. at 865, 587 S.W.2d at 52; and *Waters*, 2015 Ark. 272, 465 S.W.3d 851.

In *Schultz*, our supreme court analyzed federal and other states' caselaw to decide which framework to use when determining whether a certain transaction is a security under the Arkansas Securities Act. The supreme court noted that "[t]he definition should be flexible enough to encompass the endless succession of new and innovative or old and tried promotional schemes, where the promoters, by design, seek to risk the money or property of others in their venture." 261 Ark. at 777, 552 S.W.2d at 8. Ultimately, the supreme court held that "it is better to determine in each instance from a review of all of the facts, whether an investment scheme or plan constitutes [a security.]" *Id.* at 781, 552 S.W.2d at 10. In *Schultz*, the supreme court considered the totality of the circumstances, including how the scheme was marketed and organized, which party bore the risk, and whether the transaction resembled a true partnership. *Id.* at 781–83, 552 S.W.2d at 10–11.

Two years later, this court decided the *Smith* case. 266 Ark. 861, 587 S.W.2d 50. In that case, Smith was convicted of violating the Arkansas Securities Act and was issued a fine. On appeal, Smith argued that the circuit court should have directed a verdict in his favor because the transaction he was involved in was not the sale of a security. This court held that the transaction met the following five elements and was, therefore, the sale of a security:

(1) the investment of money or money's worth; (2) investment in a venture; (3) the expectation of some benefit to the investor as a result of the investment; (4) contribution towards the risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture.

*Id.* at 865, 587 S.W.2d at 52. This court summarized this five-element test by stating that "a security is an investment of money . . . in the risk capital of a venture with the expectation of benefit to the investor where the investor has no direct control over the investment or policy decisions of the venture." *Id.*

The most recent case instructing a court how to determine whether an instrument is considered a security is *Waters*, 2015 Ark. 272, 465 S.W.3d 851. In *Waters*, our supreme court stated that there is only one relevant question of law: "What is the proper test for determining whether an instrument constitutes a security under Arkansas law?" 2015 Ark. 272, at 6, 465 S.W.3d at 854. In its analysis, the supreme court noted,

> [T]he definition of a security within the meaning of the [Arkansas Securities] Act should not be given a narrow construction, but should be determined in each instance from a review of all the facts whether an investment scheme or plan constitutes an investment contract, or a certificate of interest or participation in a profit-sharing agreement, within the scope of the statute.

*Waters*, 2015 Ark. 272, at 8, 465 S.W.3d at 855 (citing *Schultz*, 261 Ark. 769, 552 S.W.2d 4). The courts take such an expansive view of what constitutes a security because "[t]he Act is clearly remedial and is intended to prevent fraudulent practices and activities from becoming a burden upon unsophisticated investors and the general public." *Id.* at 13, 465 S.W.3d at 858–59.

The supreme court then addressed the *Smith* five-element test as well as the family-resemblance test articulated by the United States Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990). The *Reves* family-resemblance test states,

> A note is presumed to be a "security," and that presumption may be rebutted only by a showing that the note bears a strong resemblance (in terms of the four factors we have identified) to one of the enumerated categories of instrument. If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added is to be made by examining the same factors.

494 U.S. at 67. The following four factors make up the *Reves* family-resemblance analysis: (1) the motivations that would prompt reasonable parties to enter into the transaction; (2) the plan of distribution of the instrument to determine whether it involves speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether another regulatory scheme reduces the risk of the instrument. *Id.* at 66–67.

Although the five-factor test is important in considering whether a specific transaction constitutes a security, our supreme court went on to hold that the analysis should include the *Smith* elements along with "all of the factors in a given transaction[,]" as required by *Schultz. Waters*, 2015 Ark. 272, at 11, 465 S.W.3d at 857 (citing *Schultz*, 261 Ark. 769, 552 S.W.2d 4). The supreme court noted that the factors in the *Reves* family-resemblance test were also instructive in determining whether a transaction is a security but that those factors were encompassed by the *Schultz* test.

Ultimately, our supreme court held that the circuit court in *Waters* erred by considering *only* the five factors from *Smith* rather than considering "a review of all the facts" in determining whether the transaction at issue was a security under the Arkansas Securities

7

Act. *Id.* at 13, 465 S.W.3d at 858. Specifically, the circuit court had not considered the sophistication of the parties, which was "a factor that is prominent in this court's prior cases." *Id.* After so holding, our supreme court reversed and remanded the "case to the circuit court to consider all factors surrounding the transaction, as required by *Schultz.*" *Id.*

This brings us back to the circuit court's order in this case. Here, the circuit court erroneously stated that the holding of *Waters* required an analysis of only the five-factor *Smith* test to determine whether the Agreement qualifies as a security. However, the circuit court should have considered the *Smith* test as well as a more expansive review of the entire transaction, especially considering the sophistication of the parties and any other elements that have been articulated in past cases that can help determine whether the Agreement constitutes a security.

Because the circuit court's dismissal order incorporated only the *Smith* test, and the circuit court did not consider all factors surrounding the transaction, we reverse and remand.

Reversed and remanded.

VIRDEN and THYER, JJ., agree.

*RMP LPP*, by: *Timothy C. Hutchinson* and *Lisa M. Geary*, for appellants.

One brief only.

8