Cite as 2026 Ark. App. 243

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-24-777

| | |
|---|---|
| MONTANA WEINER AND OHANA CONSTRUCTION & PROPERTY MAINTENANCE, LLC<br><br>APPELLANTS<br><br>V.<br><br>MERCHANT CAPITAL GROUP, LLC, D/B/A GREENBOX CAPITAL<br><br>APPELLEE | Opinion Delivered April 22, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-20-388]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Ohana Construction & Property Maintenance, LLC (Ohana), and Montana Weiner appeal the Benton County Circuit Court order granting summary judgment in favor of Merchant Capital Group, LLC, d/b/a Greenbox Capital (Greenbox) on Ohana and Weiner's counterclaim. On appeal, they argue that the circuit court erred by finding that Ohana's merchant cash agreement with Greenbox did not constitute a security. We affirm.

Ohana is a construction company, and Weiner owns Ohana and founded the company in 2016. Greenbox provides businesses with short-term financing such as merchant cash advances.

On August 7, 2018, Ohana entered into an agreement with Greenbox to sell $12,012 of its future receivables in exchange for $8,400. According to the agreement, Ohana's

average monthly sales were $27,607,[1] and Ohana agreed to remit to Greenbox approximately 9.70 percent of its daily receivables until the purchase price was reached.[2] The agreement set the daily payment at $130.57and further provided that after Greenbox transferred the purchase price to Ohana, Greenbox would begin making daily automated-clearing-house withdrawals from Ohana's bank account. The agreement stated that at the end of each month, Ohana could petition Greenbox to change the daily payment on the basis of actual sales that month, and Greenbox had sole and complete discretion to determine whether to allow such a change. Weiner personally guaranteed the agreement.

The agreement further provided that Greenbox would have power of attorney over Ohana's credit-card processor and bank and that Greenbox had a right to access all information regarding Ohana's transactions with any credit-card processor Ohana ever used or intended to use; Ohana could not assign, convey, or encumber the future receivables; and Greenbox had first priority in Ohana's tangible and intangible assets. The agreement also provided that Ohana did not intend to temporarily close for the next twelve months, and it

---

[1]In Ohana's application to Greenbox, it reported average gross monthly revenue of $34,000.

[2]The parties dispute whether the agreement constitutes factoring. The supreme court has defined factoring as "[t]he purchase of accounts receivable from a business by a factor who thereby assumes the risk of loss in return for some agreed discount." *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 654, 97 S.W.3d 387, 395–96 (2003) (quoting *Webster's New Third International Dictionary* (1961)). A factor buys accounts receivable at a discount, the factor's seller obtains immediate operating cash, and the factor profits when the face value of the account is collected. *Id.* (citing Irving Kellogg, *The Lawyer's Use of Financial Statements*, 143 (Univ. of Calif. Press 1967)).

permitted Greenbox to determine whether Ohana could change its name or location of the business during the agreement. The agreement granted Greenbox permission to enter or stay on Ohana's premises to inspect operations; access employees, records, or any other items requested; or interview relevant parties. It also required Ohana to conduct business consistent with past practices.

On February 4, 2020, Greenbox filed a lawsuit against Ohana and Weiner alleging that they had breached the agreement by failing to pay $10,021.25 plus accrued interest of $887.91.

On March 6, Ohana and Weiner filed a counterclaim against Greenbox.[3] The counterclaim included class-action claims and alleged that the agreement with Greenbox violated the Arkansas Securities Act and is, therefore, void ab initio. Ohana and Weiner sought to rescind the agreement, recover the money paid to Greenbox, and collect any origination fee or commissions that were paid to Greenbox.

On May 6, Greenbox moved to dismiss the counterclaim, arguing in relevant part that the purchase of future receivables for a lump sum did not constitute a security under the Arkansas Securities Act.

On August 21, the circuit court entered an amended order granting Greenbox's motion to dismiss without prejudice. The dismissal order states that *Waters v. Millsap*, 2015

---

[3]Ohana and Weiner also filed a third-party complaint against Rapid Financial Services, LLC; Quicken Loans, Inc.; and Rock Holdings, Inc. However, on July 23, 2020, Ohana and Weiner voluntarily dismissed Quicken and Rock Holdings. Further, on October 16, 2020, the court dismissed with prejudice the complaint against Rapid.

Ark. 272, 465 S.W.3d 851, "established the Arkansas five element test for determining if the parties' contract dealt with the sale of securities," and the circuit court analyzed those five elements articulated in *Smith v. State*, 266 Ark. 861, 587 S.W.2d 50 (Ark. App. 1979). In analyzing the factors, the court found that the agreement did not constitute a security.

On September 22, 2021, the circuit court held a bench trial on Greenbox's claim against Ohana and Weiner, and on October 18, the court entered an order granting Ohana and Weiner's directed-verdict motion. In the order granting their directed-verdict motion, the court found that Greenbox failed to prove that Ohana had breached the agreement. The court also found that the agreement lacked mutuality of obligations and was unconscionable because the agreement charged a default fee without an accounting for a reduction of principal. The court further concluded that because the agreement did not contain a certain payoff date, the agreement was not a note under Arkansas law.

On November 16, Ohana and Weiner appealed to this court the circuit court's order dismissing their counterclaim against Greenbox. On appeal, they argued that the circuit court erred by dismissing their counterclaim against Greenbox because the agreement qualified as a security under the Arkansas Securities Act.

On February 21, 2024, this court reversed and remanded the case to the circuit court. *See Weiner v. Merch. Cap. Grp., LLC*, 2024 Ark. App. 118, 686 S.W.3d 32. We held that the circuit court erroneously applied only the five-factor *Smith* test to determine whether the agreement qualified as a security instead of the flexible, all-inclusive test from *Schultz v. Rector-*

4

*Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977), as provided in *Waters v. Millsap*, 2015

Ark. 272, 465 S.W.3d 851. *See id.*

On remand, on June 24, 2024, Greenbox moved for summary judgment on Ohana

and Weiner's counterclaim and again argued that the agreement was not a security within

the meaning of the Arkansas Securities Act.

On July 31, the circuit court held a hearing on the summary-judgment motion and

concluded as follows:

> As the parties are in agreement, this merchant cash agreement has never been found to be a security by any court because it doesn't fit all the boxes. . . .
>
> Ohana now urges me to break new ground, and make a finding that [the merchant cash agreement] is a security. I have considered the common law and the statutory explanation contained in the Arkansas Supreme Court opinions in *Smith* and *Schultz*, and the U.S. Supreme Court opinions in cases of *Howey* and *Reves*. And the *Waters* Arkansas Supreme Court case that commented on *Reves* didn't adopt it, but appears to have included it in our analysis.
>
> All of these cases struggled with the definition of security so as to trigger the application or non-application of federal or state securities law. . . .
>
> The first consideration is whether there is an investment of money. There was no giving of money by Greenbox to Ohana with the idea of a future return or a return of increased amount. There was a specific amount of money to be repaid to Greenbox by a specific formula.
>
> Item B is whether or not it is an investment in a venture. Greenbox didn't care what Ohana's enterprise, its venture was. It was strictly a decision, business decision, to make money by providing cash today in return for payments of more cash in the future.
>
> Third, Greenbox's money did not contribute to the risk capital of Ohana. It was not risk capital of Ohana because it was only paid to Greenbox if Ohana had a

daily account balance. Not a risk to Ohana. In fact, as the parties have pointed out, Ohana didn't have to repay the amount of money.

Next consideration is whether or not there was control. I do not think that factor means daily business control, only control over the administrative mechanism by which the [merchant cash agreement] was executed and performed. Here, there's no contractual dispute. Greenbox clearly had control.

As far as a benefit to Greenbox, the MCA recited the benefit, $3,612, to be paid according to the terms of the MCA. The fact that that rate of payment could not change does not impact—doesn't make the rate of return material.

Next consideration is whether the return depends on the earnings of the corporation. The payment of all of Ohana's creditors depends on its earnings. Whether the fixed rate of interest—or if—whether the rate of interest is fixed or varies, here, the return was stated in the [merchant cash agreement], and that process was described. The number may have varied, but the process and amount did not.

The next consideration is whether this contract, the [merchant cash agreement], resembles an investment contract or a note. The answer's neither. There doesn't seem to be any dispute that it's not a promissory note. And the Court finds that it is not an investment contract, as those words are commonly used, because there was a stated return to be paid by Ohana to Greenbox.

The next consideration is the sophistication of the parties. And perhaps. . . Greenbox is more sophisticated than Ohana and Mr. Weiner, but I think that Ohana and Mr. Weiner clearly knew what they were doing.

As far as a regulatory scheme to govern this contract, there clearly is none. And I am unwilling to judicially impose one. I think Greenbox was simply a creditor, like any other creditor of Ohana. And the [merchant cash agreement] established the amount paid 1200—$12,012 in the future for a commodity, $8,400 today. And the manner in which that creditor was paid was established by the parties' contract.

On August 9, the circuit court entered an order granting summary judgment in favor of Greenbox on Weiner and Ohana's counterclaim. On August 26, Weiner and Ohana again appealed.

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Waters*, 2015 Ark. 272, 465 S.W.3d 851. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* As to issues of law presented, our review is de novo. *Id.*

On appeal, Ohana and Weiner argue that the circuit court erred by granting Greenbox's summary-judgment motion and dismissing their counterclaim because the relevant factors show that the agreement in this case is a security under the Arkansas Securities Act.

The parties agree that there is no case law holding that a merchant-cash agreement is a security. The Arkansas Securities Act defines a "security" as any

> (i) Note; (ii) Stock; (iii) Treasury stock; (iv) Bond; (v) Debenture; (vi) Evidence of indebtedness; (vii) Certificate of interest or participation in any profit-sharing agreement; (viii) Collateral-trust certificate; (ix) Preorganization certificate or subscription; (x) Transferable share; (xi) Investment contract; (xii) Variable annuity contract; (xiii) Life settlement contract or fractionalized or pooled interest in a life settlement contract; (xiv) Voting-trust certificate; (xv) Certificate of deposit for a security; (xvi) Certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or (xvii) In general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe o or purchase, any of the foregoing.

Ark. Code Ann. § 23-42-102(17)(A) (Supp. 2025).

In *Waters*, the Arkansas Supreme Court most recently discussed how courts should determine whether an instrument is considered a security under the Arkansas Securities Act. 2015 Ark. 272, 465 S.W.3d 851. The *Waters* court found that the flexible, all-inclusive test

7

set forth in *Schultz*, 261 Ark. 769, 552 S.W.2d 4, is best suited to the purposes of the Arkansas Securities Act. *Waters*, 2015 Ark. 272, 465 S.W.3d 851.

*Schultz* provides that the definition of a security within the meaning of the Act should not be given a narrow construction but should be determined in each instance from a review of all the facts whether an investment scheme or plan constitutes an investment contract, a certificate of interest, or participation in a profit-sharing agreement within the scope of the statute. *Schultz*, 261 Ark. 769, 552 S.W.2d 4. In adopting the *Schultz* approach, the *Waters* court pointed out that the "Act is clearly remedial and is intended to prevent fraudulent practices and activities from becoming a burden upon unsophisticated investors and the general public." *Waters*, 2015 Ark. 272, at 13, 465 S.W.3d at 858–59. The *Waters* court noted that the sophistication of the parties is a factor that is prominent in this court's prior cases. *Id.*

In addition to the all-inclusive *Schultz* standard, the *Waters* court held that the five-factor test set forth in *Smith*, 266 Ark. 861, 587 S.W.2d 50, remains instructive in determining whether an instrument constitutes a security. *Id.* The *Waters* court declined to adopt the family-resemblance test set forth in *Reves v. Ernst & Young*, 494 U.S. 56 (1990),[4] because the test's factors are embraced in the all-inclusive *Schultz* approach. *Id.*

---

[4]The Arkansas Securities Act is modeled after the Federal Uniform Securities Act. *Smith*, 266 Ark. 861, 587 S.W.2d 50.

Here, Ohana and Weiner argue that the circuit court erred by granting summary judgment in favor of Greenbox because the flexible, all-inclusive *Schultz* approach shows that the agreement in this case is a security.

We start our analysis under the *Schultz* approach with the prominent factor in Arkansas case law—the sophistication of the parties. Ohana and Weiner argue that the circuit court erred in concluding that the sophistication of the parties in this case suggests the agreement is not a security. They claim that Ohana and Weiner are unsophisticated merchants that the Arkansas Securities Act was designed to protect. They note that Ohana is a young business founded only two years before the agreement. They further point out that Weiner has only a high school diploma and has no experience in corporate finance. They also argue that Greenbox is a very sophisticated operation with numerous resources.

We are unpersuaded by Ohana and Weiner's argument. State securities laws were enacted to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant gold mines, and other like fraudulent exploitations. *Waters*, 2015 Ark. 272, 465 S.W.3d 851 (citing *Hall v. Geiger-Jones Co.*, 242 U.S. 539 (1917)). We have stated that "[t]he obvious purpose of all securities acts is to protect the general public." *Smith*, 266 Ark. at 864, 587 S.W.2d at 52.

The supreme court adopted the *Schultz* approach so that the Arkansas Securities Act could "encompass the endless succession of new and innovative or old and tired promotional schemes, where the promoters, by design seek to risk the money or property of others in their venture." *Carder v. Burrow*, 327 Ark. 545, 549, 940 S.W.2d 429, 431 (1997) (quoting

9

*Schultz*, 261 Ark. at 777, 552 S.W.2d at 8). Further, the court has noted, "regardless of labels, the Arkansas Securities Act was designed to protect both investors in common stock and those persons who in substance are the investors in the disguised business venture of another." *Id.* at 549, 940 S.W. 2d at 431 (quoting *Schultz*, 261 Ark. at 777, 552 S.W.2d at 8). Applying these principles, the supreme court in *Carder* upheld the circuit court's finding that a transaction was not a security and that the appellant was a sophisticated investor because he owned several companies, served as an officer in several corporations, and utilized a similar transaction on many occasions in his business. *Id.*

In this case, Greenbox provided Ohana with funds; thus, the securities laws were enacted to protect parties like Greenbox, not Ohana.[5] As to their sophistication, Ohana and Greenbox are both corporate entities. Further, Weiner entered into the agreement as Ohana's owner, and he was a residential real estate agent from 2006 through 2018 and is an officer for Ohana and another construction company. We thus agree with the circuit court's conclusion that even though Greenbox may have been more sophisticated, which is the case in most lending situations, Ohana and Weiner are not unsophisticated parties that the Arkansas Securities Act was designed to protect.

Ohana and Weiner additionally argue that the circuit court erred by finding that the agreement did not constitute a security under the *Smith* test. The *Smith* test considers the following factors: (1) the investment of money or money's worth; (2) investment in a venture;

---

[5]We acknowledge that the Arkansas Securities Act applies to both buyers and sellers. *See* Ark. Code Ann. § 23-42-103 (Repl. 2012).

(3) the expectation of some benefit to the investor as a result of the investment; (4) contribution toward the risk capital of the venture; and (5) the absence of direct control over the investment or policy decisions concerning the venture. *Smith*, 266 Ark. at 865, 587 S.W.2d at 52 (noting that the test is derived from Professor Joseph Long's law review article *An Attempt to Return Investment Contracts to the Mainstream Regulations*, 24 Okla. L. Rev. 135 (1971)). The test has been summarized to mean that a security is an investment of money or money's worth in the risk capital of a venture with the expectation of benefit to the investor where the investor has no direct control over the investment or policy decisions of the venture. *Id.*

Ohana and Weiner discuss each *Smith* element. Specifically, Ohana and Weiner argue that the agreement here meets the first two *Smith* elements—investment of money or money's worth and investment in a venture—because Greenbox purchased future receivables, not existing assets such as accounts receivable.[6] They assert that future receivables are projected revenues and are not guaranteed. They further argue that the agreement satisfies the third and fourth *Smith* factors—expectation of some benefit because of the investment and contribution toward risk capital—because Greenbox could receive its profit faster if Ohana's business was successful. They rely on the "time value of money." Conversely, they point out

---

[6]*Black's Law Dictionary* defines "asset" as "[a]n item that is owned and has value." *Black's Law Dictionary* 143 (12th ed. 2024). It defines "account receivable" as "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." *Id.* at 21.

that Greenbox risked its profit if Ohana had no future sales. Ohana and Weiner also argue

that the agreement meets the final *Smith* factor—the absence of direct control over the

business—because Greenbox had no day-to-day control over Ohana.

We hold that the circuit court did not err in finding that the agreement did not

qualify as a security when considering the *Smith* factors. Greenbox did not invest money in

Ohana. Greenbox purchased Ohana's future receivables backed by Weiner's personal

guarantee and security interests in Ohana's assets. While Greenbox could have benefited

from a faster return if Ohana's revenue increased, the agreement set Greenbox's profit at

$3,612.

The agreement also granted Greenbox some control over Ohana. For example, the

agreement gave Greenbox discretion over Ohana's name and location, and it also gave

Greenbox access to Ohana's premises, employees, and records. The agreement also required

Ohana to conduct its business consistent with past practice. Accordingly, given these

circumstances, we cannot say that the circuit court erred by finding that the *Smith* factors do

not suggest the agreement is a security.

Ohana and Weiner also discuss the factors from the family-resemblance test set forth

in *Reves*, 494 U.S. 56. They argue that because the agreement is not a note, the family-

resemblance test offers little guidance.[7] They nonetheless argue that the family-resemblance

---

[7]Ohana and Weiner argue that the test from *Securities & Exchange Commission v. Howey Co.*, 328 U.S. 293 (1946), is more appropriate here because the circuit court found that the agreement is not a note. The supreme court has stated that the *Howey* test is substantially the same as the *Smith* test. *Waters*, 2015 Ark. 272, 465 S.W.3d 851; *see Howey*, 328 U.S. 293

test suggests that the agreement is a security. They claim that Greenbox's purchase of future receivables is a profit-sharing agreement, not a sale of assets or goods, and that Greenbox entered into similar agreements with thousands of other entities. They further point out that there is no regulatory scheme concerning the merchant-cash industry.

As noted, the *Waters* court declined to adopt the family-resemblance test from *Reves*, but it stated that its factors are embraced in the all-inclusive *Schultz* approach. In *Reves*, the United States Supreme Court held that the family-resemblance test is instructive in determining whether an instrument denominated a note is actually a security within the meaning of the Securities Exchange Act. *Waters*, 2015 Ark. 272, at 12, 465 S.W.3d at 857–58 (citing *Reves*, 494 U.S. 56).

The four factors involved in the family-resemblance test are:

First, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security." Second, we examine the "plan of distribution" of the instrument, to determine whether it is an instrument in which there is "common trading for speculation or investment."[8] Third, we examine

---

(defining a security as (1) an investment (2) in a common venture (3) with a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others).

[8]In *Reves*, the Supreme Court held that the plan of distribution weighed in favor of a security finding when the issuer offered promissory notes to 23,000 members as well as to

the reasonable expectations of the investing public: The Court will consider instruments to be "securities" on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction. Finally, we examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.

*Reves*, 494 U.S. at 66–67 (internal citations omitted).

In this case, considering the family-resemblance-test factors a part of the all-inclusive *Schultz* approach, we hold that the factors indicate the agreement here is not a security. Even though future receivables are distinct from an asset or good, it is undisputed that Ohana and Weiner sought the agreement for cash-flow difficulties, and Greenbox's profit was set. Thus, the agreement is distinguishable from a profit-sharing agreement. Further, although Greenbox had entered into merchant cash agreements with other entities, the other merchant cash agreements are not related to this agreement, and Ohana—the seller in this case—entered into only one agreement. Moreover, while there is no statutory or regulatory scheme over the merchant cash industry, Greenbox did not market the agreement as an investment, and merchant cash agreements are generally not viewed as securities. Like the parties, we have found no other jurisdiction treating a similar merchant cash agreement as a security. Thus, we agree with the circuit court that the factors from the family-resemblance test do not suggest that this agreement is a security.

---

nonmembers. 494 U.S. 56. The court concluded the notes were offered and sold to a broad segment of the public. *Id.*

14

Accordingly, in giving an expansive review of the entire transaction as set forth in *Schultz*—especially considering the sophistication of the parties and the purpose of the Arkansas Securities Act—as well as a consideration of the factors in the *Smith* test and the family-resemblance test, we hold that the circuit court did not err in finding that the agreement in this case is not a security. We therefore affirm the circuit court's grant of summary judgment in favor of Greenbox.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*RMP LLP*, by: *Timothy C. Hutchinson* and *Mallory D. Shamoon*, for appellants.

*Rose Law Firm*, by: *E. Joseph McGehee* and *Tyler D. Mlakar*, for appellee.